UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


TERRY R. MARTIN,

        Plaintiff,

v.                                                                    Case No. 2:05-cv-222
                                                                      HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/


**REPORT AND RECOMMENDATION**

        Plaintiff Terry Martin was born on July 26, 1964, has an eleventh grade education and

prior work experience as machine operator in a fabrication shop. *See* transcript of administrative

proceedings at pages 44, 232-233 (hereinafter Tr. at ___).  Plaintiff's earnings records indicate that

from 1988 through sometime in 1999, plaintiff was able to work on a sustained and regular basis.

Tr. at 47-48.  On May 3, 1999, plaintiff aggravated a preexisting back injury while at work.  Tr. at

55, 234-235.  Plaintiff underwent back surgery on June 10, 1999, for a "large central disc herniation"

at L5-S1.  Tr. at 96.  Surgery was successful in relieving some of the pain in plaintiff's legs and feet,

but was not successful in relieving his back pain.  Eventually, the pain in plaintiff's legs and feet

returned.  Tr. at 79, 235-236, 261-264.  By the fall of 1999, plaintiff continued to be in pain which

was mild when he was not active but severe if he became active.  Tr. at 89.  Plaintiff had been told

by his doctors that the operation performed in June of 1999 might not relieve his back symptoms.

Tr. at 89.  In October of 1999, Dr. Weinshel suggested the possibility of further back surgery for an

interbody fusion.  Dr. Weinshel wanted to pursue conservative treatment initially and referred

plaintiff to Dr. Singh.  Tr. at 87.

Dr. Singh's records indicate that plaintiff's pain continued to worsen. Tr. at 108-131. Dr. Singh attempted to provide some relief to plaintiff by performing an intra-articular facet joint nerve blocks at L4-5 and L5-S1 on November 10, 1999. Tr. at 129. On November 22, 1999, a diagnostic discography was performed at L4-5, L3-4 and L2-3 and a lumbar spine CT was performed. Tr. at 106, 128. These tests provided evidence of a grade 5 annular tear and disc leakage with concordant pain at L4-5, *Id.* An annular tear is a leaking disc which permits irritating liquid from inside the disc to contact innervated tissue. Dr. Singh conducted another diagnostic discography and CT of the lumbar spine on February 3, 2000, which established a complete internal disc disruption and grade 5 annular tear at L5-S1. Tr. at 105, 126. Dr. Singh indicated that "at L4-5 the posterior bulging of the disc was quite evident during discography. At L5-S1 there was significant internal disc disruption." Tr. at 123. On February 28, 2000, Dr. Singh performed an IDET operation on the L4-5 disc. Tr. at 123. This is an attempt to cauterize the nerve ending in the disc and close the tear. The IDET provided some relief to one of plaintiff's legs but, according to plaintiff, his condition has worsened, not improved. Tr. at 120. Plaintiff suffered a decreased range of motion, positive straight leg raising tests with severe low back pain, and a positive Patrick's maneuver. Tr. at 116-119. Another IDET operation was performed on plaintiff on June 20, 2000. Because of the pain plaintiff was suffering, he had been taking Vicodin for a significant period of time. There was some concern that plaintiff was going to suffer liver damage and therefore the prescription was changed to Oxycontin. Tr. at 115. A further effort to reduce plaintiff's pain was conducted on July 24, 2000, when Dr. Singh performed an epidural steroid injection. Tr. at 114. An MRI was taken on August 23, 2000, which established a disc protrusion or herniation at L4-5 and L5-S1. Tr. at 104. On August 23, 2000, an epidural lysis of adhesion was performed by Dr. Singh. Dr. Singh indicated his impression was that plaintiff suffered a "failed lumbar laminectomy

syndrome with epidural fibrosis and bilateral L5 radiculopathy symptoms." Tr. at 113. On September 8, 2000, Dr. Singh noted that the Oxycontin and injections had not relieved plaintiff's pain. Dr. Rovin, a neurosurgeon, opined that plaintiff should consider further IDET procedures or a two level anterior lumbar interbody fusion. Tr. at 132. On November 16, 2000, Dr. Singh found positive straight leg raising bilaterally and noted that plaintiff's muscle strength had reduced and there were diminished reflexes. Tr. at 111. Dr. Singh felt that plaintiff suffered from "discogenic lumbar spinal pain with posterior disc protrusion and degenerative disc disease with posterior protrusion of the annulus at L4-5 as well as protrusion at L5-S1 as evidenced on MRI." Tr. at 108. Plaintiff lost his health insurance and therefore discontinued treatment with physicians and was unable to purchase his medications. Tr. at 144, 239-240, 264-265. The record does establish that plaintiff has suffered some muscle spasms and hypoflexia at the ankles and that he was "severely limited from any lifting, carrying, or bending." Tr. at 144-146.

As the foregoing establishes, by 2001 plaintiff's condition had not improved and he filed an application for disability insurance benefits (DIB) and supplement security income (SSI) benefits on April 30, 2001. Plaintiff maintains that he became disabled on May 3, 1999, as a result of his back condition. Plaintiff's application for disability benefits was denied in a decision by an Administrative Law Judge (ALJ) dated August 27, 2003. Tr. at 178-183. The Appeals Council vacated this decision and remanded for further administrative proceedings on December 22, 2003. Another hearing was held before an ALJ and a perfunctory decision was issued on February 25, 2005, adopting the earlier ALJ's decision denying plaintiff's claim for benefits. On September 16, 2005, plaintiff filed his complaint in this Court seeking a reversal of the decision of the Commissioner of Social Security denying his request for benefits. On November 23, 2005, an order was issued directing the parties to file briefs. Thereafter, on January 20, 2006, the Commissioner

filed a motion for extension of time to file her brief.  On February 23, 2006, the Commissioner filed

a motion to remand for further proceedings, requesting a *de novo* decision pursuant to the fourth

sentence of Section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).  Thus, seven years after

plaintiff suffered from his disabling injury and five years after he filed for social security benefits,

the Commissioner wants to review the case *de novo*.  Although the Commissioner does not explicitly

admit it in filings with the Court, it is apparent that the Commissioner recognizes that the decision

is significantly flawed.

> The Commissioner explains:

> Upon further analysis of the record and the arguments raised in
> Plaintiff's brief, the Agency has determined that the matter should be
> remanded to an ALJ for further proceedings and a *de novo* decision.
> The parties, through their attorneys were unable to agree to a joint
> stipulation for remand. Specifically, Defendant acknowledges that the
> final decision, either directly or by reference to the earlier ALJ
> decision, discussed the reports of Dr. Lazzara and Dr. Abrams, but
> not those portions of the reports containing the doctors' opinions
> about Plaintiff's exertional and postural limitations (Tr. 25, 146, 220).
> Remand, therefore, is required so that the ALJ, pursuant to Social
> Security Rulings 96-5p and 96-8p, can further evaluate the medical
> source opinions in the record and explain the weight accorded to each
> opinion and the rationale for accepting or rejecting the various
> limitations stated in the opinion. Defendant also acknowledges that
> remand is appropriate so that the ALJ can more fully discuss and
> evaluate the testimony offered at the second hearing, including
> addressing Plaintiff's allegation that he needs to lie down several
> times during the day to relieve his pain, and make an explicit
> credibility finding with regard to Plaintiff's alleged symptoms and
> resulting limitations.

> Defendant maintains that remand for further proceedings, not an
> award of benefits, is the appropriate remedy in this case, considering
> that factual issues still remain regarding the credibility of Plaintiff's
> allegations about symptoms and the extent to which his impairments
> limit specific work-related activities. *See Faucher v. Sec'y of Health
> & Human Servs.*, 17 F.3d 171, 175-76 (6th Cir. 1994) ("A court can
> . . . immediately award benefits only if all essential factual issues
> have been resolved and the record adequately establishes a plaintiff's

entitlement to benefits"). Where an ALJ has not properly supported his rejection of a medical source opinion, remand is proper, as there may be evidence to which the ALJ can point to justify his rejection of the opinion. *Salvador v. Sec'y of Health & Human Servs.*, 917 F.2d 13, 15 (9th Cir. 1990). Moreover, it is not appropriate for a Court to substitute its impression regarding the credibility of a witness for that of the trier of fact. *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 474 U.S. 1075 (1988). Because all essential factual issues have not been resolved, remand, rather than outright reversal, is the appropriate remedy.

This Court cannot reverse the Commissioner and remand for an award of benefits because of the Commissioner's incompetence in this case. It is indeed unfortunate that seven years after plaintiff suffered his injury and five years after he filed his claim for benefits, plaintiff is now being asked to return for a *de novo* hearing before an ALJ. This Court's review of a denial of social security benefits is limited to determining whether or not the Commissioner's findings are supported by substantial evidence and whether a proper legal standard was utilized. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). This Court may not try the case *de novo* nor resolve conflicts in the evidence nor decide questions of credability. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The Commissioner is required to follow a five step analysis in determining whether an individual is entitled to benefits. *See Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Plaintiff is required to first demonstrate that he is not currently engaged in substantial gainful activity at the time benefits are sought. Second, plaintiff must show that he suffers from a severe impairment which significantly limits his physical ability to do basic work. Third, plaintiff must demonstrate that his impairment is severe enough and is expected to last for at least 12 months. Fourth, plaintiff's impairment must prevent

plaintiff from performing his past relevant work. At the fifth step, the Commissioner must determine whether other work exists in the national economy that plaintiff can perform, if plaintiff's impairment prevents him from doing his past relevant work. The burden of proof shifts to the Commissioner at the fifth step. The burden of proof shifts at the fifth step in order to require the Commissioner to prove the availability of jobs in the national economy that plaintiff can perform. *See Abbott v. Sullivan*, 906 F.2d at 918.

I have carefully reviewed the entire record in this matter. I agree with the Commissioner that there is not substantial evidence to support the finding of the ALJ. The question is whether or not the matter should be remanded for an award of benefits or for further proceedings. As the Commissioner correctly indicates, this Court may order an award of benefits only in a case where all the central factual issues have been resolved and the record establishes a plaintiff's entitlement to benefits. *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). According to the Commissioner, "there must be overwhelming proof of disability, or proof of disability must be strong and evidence to the contrary must be lacking." Defendant's Response to Plaintiff's Motion for Reconsideration at page 2. I have reviewed the entire record and conclude that remand for further proceedings is not justified.

There is overwhelming proof that beginning in May of 1999, plaintiff was not capable of performing any substantial gainful employment. Plaintiff underwent a series of medical procedures, major back surgery first and then a variety of other procedures as outlined above, which clearly rendered plaintiff incapable of performing any substantial gainful employment. The medical evidence of record establishes that plaintiff suffered a serious back condition, which caused him severe pain. Plaintiff was prescribed Vicodin and Oxycontin in an effort to relieve his pain. There is nothing in the record to suggest that plaintiff was a malingerer or that the doctors did not consider

his complaints credible.  Moreover, a review of the medical evidence of record indicates that plaintiff was limited to lifting no more than five pounds, which renders him incapable of performing any sedentary work.  The decision under review by this Court is the 2003 decision of the ALJ which found plaintiff capable of performing a limited range of sedentary work.  However, the medical evidence of record establishes that between May 1999 and the date of the 2003 decision, there was never a 12-month period when plaintiff was capable of performing any work.  There is, in my opinion, overwhelming proof of disability and no evidence to support a contrary decision.  In fact, the Commissioner does not point to evidence which supports a contrary decision but suggests that there should be a *de novo* hearing without fully explaining what purpose that would serve.  The Commissioner maintains that factual issues remain regarding plaintiff's credibility.  A review of the record fails to provide any evidence to support a finding that plaintiff's assertions about his condition are not credible.

Accordingly, it is respectfully recommended that the decision of the Commissioner be reversed and this matter be remanded for an award of benefits.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3.  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   April 13, 2006